IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOYNE USA, INC., | CV 24-70-H-TJC |
| Plaintiff, | **ORDER** |
| vs. | |
| FEDERAL INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Boyne USA, Inc. ("Boyne") brings this action against Defendant Federal Insurance Company ("Federal") relative to insurance coverage for two underlying class actions brought against Boyne in Montana and Michigan. (Doc. 5.) Boyne seeks declaratory judgment as to the applicable limit of insurance available for the underlying actions.

Presently before the Court are Federal's Motion for Judgment on the Pleadings (Doc. 9), and Boyne's Motion for Summary Judgment (Doc. 17.) The motions are fully briefed and ripe for the Court's review. For the following reasons, the Court finds Federal's motion should be **GRANTED**, and Boyne's motion **DENIED**.

The issue before the Court is whether the "Related Claims" provision in Federal's policies applies to the two class action lawsuits filed against Boyne. If the two class actions are related, then Boyne is entitled to only one limit of

1

liability, in the amount of $5 million. If the class actions are not related, however, Boyne would be entitled to a second limit of liability.

## I.     BACKGROUND

### A.     Underlying Actions

On December 30, 2021, Boyne was named as a defendant in a lawsuit entitled *Lawrence Anderson, et al. v. Boyne USA, Inc., et al.* in the United States District Court for the District of Montana, Butte Division, Case No. 2:21-cv-95-BMM (the "Montana Action"). (Doc. 5-1.)

The Montana Action was brought as a class action on behalf of owners of residential units at several condominium-hotels that were developed by Boyne at the Big Sky Resort in Madison County, Montana. (*Id.*) The Montana Action was based on a mandatory rental management program established by Boyne. The Montana plaintiffs alleged generally that Boyne required unit owners to solely use Boyne as rental manager, and required owners to sign a non-negotiable rental management agreement that could be unilaterally changed by Boyne. The Montana plaintiffs alleged that as a result of the rental management program, Boyne had exclusive control over the rental of units, and used that control to improperly extract revenue from unit owners, conceal its conduct from owners, and impose unreasonable costs on owners. The Montana plaintiffs asserted the contractual arrangement created by Boyne constituted an investment contract under

the Montana Securities Act and the Securities Exchange Act of 1934. The Montana complaint included claims for breach of fiduciary duty, constructive fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment/constructive trust, unfair trade practices/antitrust, and declaratory judgment.

Approximately three years later, on December 3, 2024, Boyne was sued in the United States District Court for the Western District of Michigan, in a case entitled *Barbara Hornbeck, et al. v. Boyne USA, Inc. et al.*, Case No. 1:24-cv-682-HYJ-PJG (the "Michigan Action"). (Doc. 5-4.)

The complaint in the Michigan Action alleged similar class claims as those raised in the Montana Action. The Michigan Action was brought on behalf of owners of realty in three Michigan resorts developed by Boyne, and is based on an exclusive rental management program operated by Boyne. Like the Montana plaintiffs, the Michigan plaintiffs allege owners are required to use Boyne as their exclusive rental agent, and must sign a rental management agreement that is non-negotiable and subject to unilateral change by Boyne. The Michigan plaintiffs assert Boyne uses the control it granted itself through the mandatory rental management program to siphon revenue that should be shared with realty owners, and to impose excessive fees and costs on owners. The Michigan plaintiffs further allege Boyne's contractual arrangement constitutes an investment contract under

3

the Michigan Securities Act and the Securities Exchange Act of 1934. The Michigan complaint alleges claims for constructive fraud, breach of contract, unjust enrichment/constructive trust, violation of section 2 of the Sherman Act: abuse of monopoly power, sale of unregistered securities under federal law, sale of unregistered securities under Michigan law, and declaratory judgment.

### B. Coverage Provisions

At the time the Montana Action was filed, Boyne was insured under a claims-made ForeFront Portfolio 3.0 Policy issued by Federal, Policy No. 8248-4348, with a policy period of November 15, 2021 to November 15, 2022 (the "Policy"). The Policy contained a Directors & Officers and Entity Liability Coverage Part, that provided a limit of liability of $5 million dollars subject to a $100,000 retention.

When the Michigan Action was filed, Boyne was insured under Federal Renewal Policy No. 8248-4348, with a term of November 15, 2023 to November 15, 2024 (the "Renewal Policy"). The Renewal Policy also had a $5 million dollar policy limit and $100,000 retention.

The general Terms and Conditions of the Policy and the Renewal Policy (collectively the "Policies") contain identical "Related Claims" sections. The Policies state in relevant part:

/ / /

**RELATED CLAIMS**

With respect to the **Liability Coverage Parts**:

(A) All **Related Claims** shall be deemed a single **Claim** made in the **Policy Year** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable **Liability Coverage Part** (the "Earliest Related Claim").

(B) All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

(Doc. 5-2 at 12; Doc. 5-3 at 12.)

The Policies define "Related Claims" as follows:

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(*Id.* at 11.)

## II.   DISCUSSION

Federal now moves for judgment on the pleading on grounds that the Montana Action and Michigan Action are "Related Claims," and therefore, Boyne is entitled to only one $5 million limit of liability under the Policies. Federal contends the lawsuits are related because they are both based on Boyne's rental management program.

Boyne has filed a cross motion for summary judgment, arguing the underling lawsuits are not related. Boyne argues the language of the Polices is

5

ambiguous, and should be construed against Federal and in favor of extending coverage. Boyne further argues that even if the Policies are not ambiguous, the underlying lawsuits are unrelated, and therefore, Boyne is entitled to the full benefits of both Policies.

### A. Legal Standards

#### 1. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, the same legal standard "applies to motions brought under either rule." *Id*. As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion without converting the motion into one for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

#### 2. Summary Judgment

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter

of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. See, *Matsushita*, 475 U.S. at 587.

  **B.**  **Whether the Policy Language is Ambiguous**

  The Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (2014).

  As noted above, the Policies define "Related Claims" as "all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related

facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." (Docs. 5-2 at 11; 5-3 at 11.) Boyne argues "Related Claims" is not fully defined in the Policies because the following terms are left undefined: "based upon," "arising from," "or in consequence of," "related facts," "circumstances," "situations," "transactions," and "events." Boyne, therefore, asserts the "Related Claims" limitation of the Policies is ambiguous.

A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003). "It is well established that in construing and analyzing the terms of an insurance policy we look first to the policy's plain language. In doing so we apply the 'common sense meaning as viewed from the perspective of a reasonable consumer of insurance products.'" *Monroe v. Cogswell Agency*, 234 P.3d 79, 82 (2007) (citing *Stutzman v. Safeco Ins. Co. of* America, 945 P.2d 32 (1997).

Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009). "An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English . . . and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

The Montana Supreme Court has not specifically addressed whether the phrase "related claims" is ambiguous in the context of claims-made policies. The Court must, therefore, predict how the Montana Supreme Court would likely decide the issue. *Medical Laboratory Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) ("When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."). In doing so, the Court may look to "well-

reasoned decisions from other jurisdictions." *Burlington Ins. Co. v. Oceanic Design & Construction, Inc.*, 383 F.3d 940, 944 (9th Cir. 2004).

The Court finds the Montana Supreme Court would likely find the term "Related Claims" as used here, is not ambiguous. First, the term "related" has a plain and ordinary meaning that can be applied. The Montana Supreme Court has endorsed the use of dictionary definitions to interpret the terms of an insurance contract. *See e.g. Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 866 (Mont. 2013); *Farmers Union Mut. Ins. Co. v. Horton*, 67 P.3d 285, 288-89 (Mont. 2003). Dictionary definitions of "related" include being "[c]onnected in some way; having relationship to or with something else," *Related*, Black's Law Dictionary (12th ed. 2024), and "connected by reason of an established or discoverable relation," *Related*, Mirriam-Webster Online Dictionary (Aug. 2025).

Second, multiple courts across the country have addressed identical or substantially similar policy language, and held the term "related" is not ambiguous. Courts generally construe the term broadly, and hold it covers a range of logical or causal connections. *See e.g. Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989) ("[T]he common understanding of the word 'related' covers a very broad range of connections, both causal and logical."); *Bay Cities Paving & Grading Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271, 1274 (Cal. 1993) (stating

"'[r]elated' is a commonly used word with a broad meaning that encompasses a myriad of relationships" and finding the term "is not ambiguous and is not limited only to causally related acts."); *Continental Cas. Co. v. Wendt*, 205 F.3d 1258, 1262 (11th Cir. 2000) ("The words 'relate' or 'related' are commonly understood terms in everyday usage.  They are defined in the dictionary as meaning a 'logical or causal connection between' two events.  There is no ambiguity unless one is *created* through the device of simply ignoring on half of the definition."); *Highwoods Properties, Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 924 (8th Cir. 2005) (stating the "meaning of the terms 'related' and 'series' do have common meanings sufficiently clear to be applied" and therefore, concluding a related claims provision in a policy was not ambiguous).  When faced with this issue, the Court finds the Montana Supreme Court will likely follow the weight of these well-reasoned opinions.

Finally, although the Montana Supreme Court has not addressed whether a "Related Claims" provision like the one here is ambiguous, one justice has discussed a similar provision in dissent.  In *Rolan v. New West Health Servs.*, 504 P.3d 464, 474-76 (Mont. 2022) (J. McKinnon), one of the issues before the Court was whether coverage for an underlying class action was limited to a $1 million "each claim" limit or a $3 million aggregate limit.  Ultimately, the *Rolan* majority reversed on other grounds that did not require the Court to reach the related claims

11

question. *Id.* at 472-73. But Justice McKinnon, writing separately, touched on the issue. *Id.* at 474-76.

Justice McKinnon noted that the policy in *Ronan* defined "Related Claims" as "all Claims for Wrongful Acts based on, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, casually or in any other way." *Id.* at 475-76. She found the policy's definition was "clear and unambiguous," citing *Wendt*, 205 F.3d at 1263-54 and *Gregory*, 876 F.2d at 606, among other cases, in support of her conclusion. *Id.* at 476. Although Justice McKinnon's discussion is not binding precedent, her dissent is a further indicator of how the Montana Supreme Court may decide the issue.

In support of its ambiguity argument, Boyne asserts the phrase "arising from" that is contained within the Policies' definition of "Related Claims" has been held to be ambiguous by the Montana Supreme Court. Boyne cites the Montana Supreme Court's decisions in *Pablo v. Moore,* 995 P.2d 460 (Mont. 2000); *Wendell v. State Farm Mut. Auto Ins. Co.*, 974 P.2d 623 (Mont. 1999), and *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348 (Mont. 2013).[1] But these cases are

---

[1] Boyne also cites *Oxnard Manor LP v. Hallmark Specialty Ins. Co.*, 709 F.Supp.3d 971 (C.D. Cal. 2023) and states the *Oxnard* court "ruled that the 'Related Claims' provision was ambiguous due to its string of undefined terms

12

distinguishable because none of them addressed a "Related Claims" provision, or the phrase "arising from" in the context of a "Related Claims" provision.

Moreover, the Montana Supreme Court has never held the phrase "arising from" is per se ambiguous. To the contrary, the Court has enforced insurance provisions that contain the term "arising out of." *See e.g. R.S. v. United Servs. Auto. Ass'n*, 507 P.3d 565, 567 (Mont. 2022) (holding "clause excluding coverage for claims 'arising out of sexual misconduct' is not ambiguous"); *Huckins v. United Servs. Auto. Ass'n*, 396 P.3d 121, 125 (Mont. 2017) (finding a 'failure to disclose' exclusion that contained the phrase "arising out of" was not ambiguous).

---

contained within the definition." (Doc. 16 at 25.) *Oxnard* did not so hold. In fact, the court stated the opposite. The court held the policy's 'Related Claims' "definition *is not ambiguous, and therefore its clear and explicit meaning* should govern." *Oxnard*, 709 F.Supp.3d at 983 (emphasis added). The *Oxnard* court then went on to find that the underlying actions at issue were not related under the policy. The ultimate result in *Oxnard* is inapposite, however, because the 'Related Claims' provision there involved a much narrower relatedness provision, which was markedly different from the one at issue here.

The policy in *Oxnard* defined "'Related Claims as 'two or more Claims arising out of a *single* act, error or omission that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id.* at 983 (emphasis added). The *Oxnard* court explained the policy's use of the term "single" made it clear that the claims had to arise "out of one act, error or omission, as opposed to a series of acts, error, or omissions." *Id.* at 984. In contrast, the definition of "Related Claims" at issue here does not contain the word "single" or have any similar limiting language. To the contrary, the definition is couched in the plural, and describes a broader range of relationships: "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions or events." (Docs. 5-2 at 11; 5-3 at 11.)

13

*See also Rochdale Ins. Co. v. Dixon*, 2020 WL 3064717, *3 (D. Mont. June 9, 2020) (rejecting argument that "'arising out of' is always ambiguous in the insurance context"); *Safeco Ins. Co. of Am. v. Grieshop*, 2021 WL 1209564, *6 (D. Mont. Mar. 31, 2021) (stating the fact "arising out of" had been found to be ambiguous in other contexts, was insufficient to raise an ambiguity in the case before the court). Therefore, the Court finds the inclusion of the phrase "arising from" in the "Related Claims" definition does not render the provision ambiguous.

Having found the Policies are unambiguous, the Court turns to the issue of whether the underlying lawsuits are "Related Claims" under the Policies.

### C.  Whether the Underlying Lawsuits are "Related Claims"

When determining whether multiple claims are related, courts generally "do not require a showing of the actual facts." *Health First, Inc. v. Capitol Specialty Ins. Corp.*, 230 F.Supp.3d 1285, 1299 (M.D. Fla. 2017). "Rather, courts often focus on and compare the underlying allegations to determine if multiple claims are related under an insurance policy's related claims provision." *Id.* (collecting cases). *See also Stafford v. Stanton*, 631 F.Supp.3d 391, 395 (W.D. La. 2022) (stating courts focus on and compare the underlying allegations, rather than focusing on the "actual facts" to determine relatedness); *Nomura Holding Am. Inc. v. Fed. Ins. Co.*, 629 Fed. Appx. 38, 40 (2d Cir. Oct. 21 2015) (affirming district court's "side-by-side review of the underlying claims" to find underlying lawsuits

were related claims); *Northrop Grumman Corp. v. Axis Reinsurance Co.*, 809 Fed. Appx. 80 (3rd Cir. Aprill 22, 2020) ("[T]o decide whether the two actions allege related wrongful acts, we compare each of the complaints and the insurance policies.").[2] Accordingly, the Court will compare the allegations in the Montana Action and the Michigan Action to determine if they are related.

Courts applying related claims provisions have held that underlying claims "may be related even if they allege different types of causes of action and arise from different acts." *In re DBSI, Inc.*, 2011 WL 3022177, *4 (Bankr. D. Del. July 22, 2011) (citing *Wendt*, 205 F.3d at 1264). "The relevant inquiry is whether there is a 'single course of conduct' that serves as the basis for the various causes of action." *Id.* *See also Wendt*, 205 F.3d at 1264 (holding claims are related where the wrongful acts involve "the same course of conduct" "aimed at a single particular goal"); *Highwoods*, 407 F.3d at 924-25 (finding two cases met the definition of related because they arose from the same merger process, even though they did not arise out of identical facts); *Liberty Surplus Ins. Corp. v. Samuels*, 562 F.Supp.3d 431, 442 (N.D. Cal. 2021) (finding claims were related because they

---

[2] This approach is consistent with Montana law. *See Graber v. State Farm Fire and Cas. Co.,* 797 P.2d 214, 217 (Mont. 1990) ("The insurance company must look to the allegations of the complaint to determine if there is liability coverage," and "where the complaint alleges events not within the coverage of the policy ... then the insurer has no duty to defend."); *Lloyd A. Twite Family Partnership v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1158 (Mont. 2008) ("If the facts alleged in the complaint do not come within the policy's terms, then there is no duty to defend.").

were "part of a single course of conduct or a single plan"); *Lloyd's Syndicate 3624 v. Biological Res. Ctr. of Ill., LLC*, 341 F.Supp.3d 841, 845 (N.D. Ill. 2018) (finding 10 underlying cases were related, despite some variation among them, because the cases were "all based upon allegations of the same specific course of conduct").

Moreover, claims can be related even if the suits are "filed by two different sets of plaintiffs in two different fora under two different legal theories," as long as the "common basis for those suits" is the same. *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely Law Corp.*, 162 F.Supp.3d 1068, 1077 (C.D. Cal. 2016) (citing *WFS Fin., Inc. v. Progressive Cas. Ins. Co., Inc.*, 232 Fed. Appx. 624, 625 (9th Cir. April 16, 2007)). *See also Health First*, 230 F.Supp.3d at 1301 ("[T]hat different claimants brought suit is not dispositive in a related claims analysis"), affirmed by *Health First, Inc. v. Capitol Specialty Ins. Corp.*, 747 Fed. Appx. 744, 751 (11th Cir. Aug. 22, 2018) ("[Insured's] half-hearted attempts to distinguish the underlying lawsuits based on the identity of the plaintiffs or time at which they were filed do not change the facts that all the lawsuits describe a continuing pattern of the same or similar bad behavior.").

Here, the Court finds the Montana and Michigan actions are "Related Claims" because they assert causes of action against Boyne based on the same general business practice and course of conduct. Although the suits are brought by

different plaintiffs, in different forums, and concern different Boyne properties, Boyne's mandatory rental management program is at the center of both lawsuits. As the opening paragraph of the Montana Action explains "[t]his action arises from three condominium hotels at Big Sky Resort . . . A major feature of the Condo-Hotels and other condominiums is a rental management program operated by Boyne." (Doc. 5-1 at ¶ 1.) Likewise, the Michigan Action states "[t]his action arises from various realty purchase opportunities at three Michigan resorts . . . One of the main features of the Boyne Michigan Properties is an exclusive rental management program operated by Boyne." (Doc. 5-4 at ¶ 1.)

Indeed, in many instances the underlying complaints are nearly verbatim. For example, the Montana Action alleges "Boyne requires unit owners to sign a rental management agreement to participate in the rental management program. The terms of the rental management agreement are non-negotiable and can be unilaterally changed by Boyne." (Doc. 5-1 at ¶ 2). The Michigan Action states "Boyne requires realty owners to sign a Rental Management Agreement to participate in the rental management program. The terms of the Rental Management Agreement are non-negotiable and can be unilaterally changed by Boyne." (Doc. 5-4 at ¶ 2.) Both suits identically allege, "Boyne has used its position as the developer of the [properties] to grant itself an improper degree of control of the [properties]. Boyne used that control to improperly extract profits

17

that justifiably belong to Plaintiffs and class members while simultaneously imposing unreasonable costs on Plaintiffs and class members." (Docs. 5-1 at ¶ 34; 5-4 at ¶ 46.) Substantial similarities between complaints is evidence of relatedness. *See Navigators Specialty Ins. Co. v. Double Down Interactive, LLC*, 2019 WL 3387458, *3 (W.D. Wash. July 26, 2019) (finding claims interrelated where "the similarities between the two actions are obvious. Several entire portions of the Benson complaint are copied directly from the Phillips complaint); *Health First*, 230 F.Supp.3d at 1302 ("[G]iven the significant similarities between the complaints, the allegations in the various lawsuits undoubtedly demonstrate a common scheme, and therefore, are related.").

To be sure, there are some differences between the Montana and Michigan Actions. As Boyne points out in its Statement of Undisputed Facts and in briefing, the "two underlying suits involve different time periods, different locations, different plaintiffs, different master deeds, different management agreements and different HOA agreements." (Doc. 16 at 30.) But these distinctions do not convince the Court that the underlying suits are not related. Taken as a whole, the underlying complaints allege the same general course of conduct – Boyne imposes a rental management program on owners of properties it has developed, and uses the program to enrich itself at the expense of owners through various mechanisms. Both cases also allege that Boyne's exclusive rental management program violates

18

securities laws and constitutes an unregistered security.  The underlying lawsuits are, therefore, "Related Claims."

Accordingly, because the Court finds the Montana Action and Michigan Action are "Related Claims," coverage is limited to one $5 million limit of liability under the Policies.

### III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Federal's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and

2. Boyne's Motion for Summary Judgment (Doc. 17) is **DENIED**.

DATED this 25th day of August, 2025.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge